UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-62720-CIV-MARRA/BRANNON

DEAN JANSSEN,

Plaintiff,

vs.

MALIN HALEY DIMAGGIO BOWEN
& LHOTA, P.A., a Florida Professional
corporation (fka Malin Haley & DeMaggio, P.A.)
BARRY HALEY,

Defendants.
_____/

## OPINION AND ORDER

This cause is before the Court upon Defendants' Motion to Dismiss Plaintiff's Amended

Complaint (DE 33); Plaintiff's Opposed Motion for Oral Argument (DE 37) and Defendants'

Motion for Consideration of Supplemental Authority (DE 41).  The Court has carefully

considered the motions and is otherwise fully advised in the premises.

I.  Background

Plaintiff Dean Janssen ("Plaintiff") brings this four-count Amended Complaint against

Defendants Malin, Haley, DiMaggio, Bowen & Lhota, P.A. ("the firm"), a law firm, and

Defendant Barry Haley ("Haley"), an attorney at the firm (collectively, "Defendants").

Specifically, the Amended Complaint brings claims for professional negligence against Haley

(count one), professional negligence against the firm (count two), breach of contract against the

firm (count three) and imputed negligence against the firm (count four).  The Amended

Complaint makes the following allegations:

In early 2000, Plaintiff developed a device that added the mobility of a bicycle to an elliptical exercise machine. (Am. Compl. ¶ ¶ 15, 18.)  Plaintiff was the "first person" to have invented a "self-propelled exercise, recreation and transport device" with the following features: (1) a frame with a drive wheel; (2) a sprocket connected to the drive wheel; (3) a second sprocket linked to the drive wheel sprocket[ed] by a chain; (4) crank arms attached to the second sprocket; (5) platforms for the rider's feet that moved in a reciprocating path connected to the crank arms and (6) a propulsion system that allows the rider's lower extremities to move in an elliptical pattern. (Am. Compl. ¶ 21.)  This invention made "numerous improvements" on the prior art by, among other things, allowing the rider's feet to move in an elliptical pattern. (Am. Compl. ¶ 22.) Plaintiff spent at least $100,000 developing his invention. (Am. Compl. ¶ 24.)  Plaintiff intended to protect his invention with a patent and then develop and produce the device himself and/or find a qualified partner to produce it under a licensing agreement. (Am. Compl. ¶ 57.)

Plaintiff retained Defendants to research, draft, file and prosecute a valuable patent application with the United States Patent and Trademark Office ("USPTO").  (Am. Compl. ¶ 25.) Defendants were supposed to: (1) analyze the invention for understanding of the mechanical structures; (2) compare the invention to the prior art; (3) recognize and understand the technical improvements the invention made to the prior art; (4) draft, file and prosecute to issuance a patent application with claims that properly captured the invention's technical improvement over the prior art (5) draft, file and prosecute to issuance a patent application with claims that focused only on the invention's technical improvement over the prior art and (6) draft, file and prosecute to issuance a patent application with claims having the broadest language acceptable to the USPTO. (Am. Compl. ¶ 29.)

On or about November 2000, Defendants filed the first patent application with claims "so negligently, incorrectly, and narrowly worded that they rendered the patent effectively worthless." (Am. Compl. ¶ 30.)  For example, Defendants claimed a litany of elements entirely superfluous to the novelty of the invention. (Am. Compl. ¶ 31.)  By including these unnecessary elements, the scope of the patent was narrowed and the invention cannot be protected or marketed and Plaintiff cannot collect damages and/or royalties from competitors.  (Am. Compl. ¶ 32.)  In fact, the USPTO issued a formal objection, calling the claims "grammatically incorrect and indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention." (Am. Compl. ¶¶ 33-34.)  In addition, Defendants did not submit drawings that properly illustrated the invention's claimed features, which resulted in a formal objection by the USPTO. (Am. Compl. ¶ 35.)  Moreover, Defendants failed to respond properly to the January 4, 2002 office action by the USPTO. (Am. Compl. ¶ 36.)   The '041 Patent issued on November 26, 2002. (Am. Compl. ¶ 39.)  Defendants failed to recognize the negligent drafting of the claims and timely amend the '041 Patent. (Am. Compl. ¶ 40.)

On September 11, 2002, Larry Miller of Rochester, Michigan filed for a patent device that, among other things, had (1) a frame with a drive wheel; (2) a sprocket connected to the drive wheel; (3) a second sprocket linked to the drive wheel sprocket by a chain; (4) crank arms attached to the second sprocket; (5) platforms for the rider's feet that move in a reciprocating path connected to the crank arms and (6) a propulsion system that allows the rider's feet to move in an elliptical fashion. (Am. Compl. ¶ 41.)  The Miller patent, '127 Patent, issued on December 16, 2003 was much broader in scope and provided greater protection for the same improvements that Plaintiff's invention made on the prior art. (Am. Compl. ¶¶ 42-43, 46.)

Plaintiff continued to refine his invention, and on or about October 1, 2002, Defendants filed a second patent application with claims "so negligently, incorrectly, and narrowly worded that they rendered the patent effectively worthless." (Am. Compl. ¶ 48.) Defendants "negligently worded" the claims by "continuing to claim a litany of elements that are entirely superfluous to the novelty of Plaintiff's invention." (Am. Compl. ¶ 49.) Plaintiff's second patent application resulted in the '022 patent issuing on November 26, 2002. (Am. Compl. ¶ 51.) Plaintiff paid Defendants approximately $18,000.00 in legal fees during their entire representation of Plaintiff. (Am. Compl. ¶ 55.)

In 2002, Plaintiff sold his chiropractic practice to focus on the development and marketing of his invention and patents. (Am. Compl. ¶ 58.) Plaintiff repeatedly tried to market his invention and patents in the marketplace, but those attempts were unsuccessful. (Am. Compl. ¶ 59.) The defective claims of Plaintiff's patents caused rejections from potential business partners. (Am. Compl. ¶ 61.) After Plaintiff's patents issued, he learned of another self-propelled elliptical device, marketed under the name "Elliptigo," and sold under a licensing agreement with the owner of Miller patent. (Am. Compl. ¶ 63.) The Elliptigo is commercially successful. (Am. Compl. ¶ 64.) The Elliptigo features the same improvements over the prior art as Plaintiff's invention. (Am. Compl. ¶ 65.) Plaintiff also learned of another self-propelled elliptical device sold under the trade name "Streetslider." (Am. Compl. ¶ 67.) The Streetslider is commercially successful and features the same improvements over the prior art as Plaintiff's invention. (Am. Compl. ¶ 69.) Because of the "negligently drafted claims" of Plaintiff's patents, neither the Elliptigo nor the Streetslider infringe on any claim of Plaintiff's patents. (Am. Compl. ¶ 71.) The Elliptigo falls with the scope of the claims of the Miller patent. (Am. Compl. ¶ 72.) If the claims

of the Miller patent were asserted against the Elliptigo or the Streetstrider, they would infringe at least one claim of the Miller patent. (Am. Compl. ¶¶ 73, 77.)  But for Defendants' drafting of the patents, Plaintiff would be able to demand and receive a royalty and/or licensing rights from, or enforce an injunction against the manufacturer, distributor, retail stores and users of the Elliptigo and Streetstrider devices. (Am. Compl. ¶ 78.)

In late 2010, Mr. Haley saw the Elliptigo in the Wall Street Journal, called Plaintiff and told him, "You're getting ripped off." (Am. Compl. ¶ 79.)    Plaintiff then discussed with Mr. Haley the possibility of an infringement suit against Elliptigo. (Am. Compl. ¶ 80.)  At first, Mr. Haley told Plaintiff he felt Plaintiff had a good infringement case. (Am. Compl. ¶ 81.)  During this time, Plaintiff spoke with Brian Pate, the co-founder of Elliptigo, and Mr. Pate told Plaintiff that they discovered Plaintiff's patents but felt that Plaintiff's patents were of no value compared to the Miller patent and that was the reason Elliptigo licensed the Miller patent.  (Am. Compl. ¶¶ 82-83.)  Plaintiff asked Mr. Haley to draft a letter to Elliptigo. (Am. Compl. ¶ 85.)  Around this same time, Mr. Haley traveled to a gym to inspect an Elliptigo. (Am. Compl. ¶ 86.)  Mr. Haley also spoke with an attorney, Jacquelyn Holden, who later told Plaintiff she was interested in the case and was waiting on additional information from Mr. Haley. (Am. Compl. ¶¶ 87-88.)

Subsequently, Mr. Haley told Plaintiff that "unless something was wrong, the infringement suit looked good." (Am. Compl. ¶ 89.)  However, Mr. Haley never drafted any letter to Elliptigo nor provided Ms. Holden with an analysis of any infringements because he realized  Plaintiff's patents were negligently prepared. (Am. Compl. ¶¶ 91-96.)  Plaintiff spoke with another patent attorney who told him that, based on the drafting of the Plaintiff's patents, an infringement suit would be futile. (Am. Compl. ¶ 97.)

Defendants move to dismiss Plaintiff's Amended Complaint on three different bases. First, they claim that the Amended Complaint lacks subject matter jurisdiction because Plaintiff lacks standing to sue for professional negligence and imputed negligence and such claims are not ripe. Second, Defendants move to dismiss the Amended Complaint for failure to state a claim for professional negligence, imputed negligence and breach of contract.  Defendants argue that the negligence claims lack any allegations regarding an underlying failed lawsuit or other action between Plaintiff and the alleged infringers that resulted in a harmful result to Plaintiff. Defendants also contend that the breach of contract claim is duplicative.  Lastly, Defendants argue that the Amended Complaint should be dismissed for failure to join a necessary party; namely, the Miller patent holder.  In response, Plaintiff claims malpractice can be established from a loss of a patent right, without any underlying litigation, and it is unnecessary to litigate a frivolous lawsuit before filing a malpractice action.

II.  Legal Standard

Where a motion to dismiss is made on the basis of lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, subject matter jurisdiction may be attacked either facially or factually. See McElmurray v. Consolidated Gov't of Augusta-Richmond County, 501 F.3d 1244, 1251 (11th Cir. 2007); Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990). In a facial attack on a complaint, the Court takes all the allegations in the complaint as true in order to determine whether a plaintiff has adequately alleged a basis for subject matter jurisdiction. Lawrence, 919 F.2d at 1528-29. Here, Defendants are making a facial attack on the complaint and the Court will take all the allegations in Plaintiff's complaint as true.

It is well-established that courts have an independent obligation to ensure that standing exists. Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986). Article III grants federal courts judicial power to decide only cases and controversies. Allen v. Wright, 468 U.S. 737 (1984). The constitutionally minimum requirements for standing are (1) the plaintiff must have suffered, or must face an imminent and not merely hypothetical prospect of suffering, an invasion of a legally protected interest resulting in a "concrete and particularized" injury; (2) the injury must have been caused by the defendant's complained-of actions and (3) the plaintiff's injury or threat of injury must likely be redressible by a favorable court decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

Similar to the standing doctrine, is the ripeness doctrine. "Article III of the United States Constitution limits the jurisdiction of the federal courts to cases and controversies of sufficient concreteness to evidence a ripeness for review." Digital Properties, Inc. v. City of Plantation, 121 F.3d 586, 589 (11th Cir. 1997).  "The ripeness doctrine prevents the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Pittman v. Cole, 267 F.3d 1269, 1278 (11th Cir. 2001) (quoting Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1315 (11th Cir.2000)).

With respect to the motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court observes first that Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to

7

relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do. Factual allegations must be enough to raise a right to relief above the

speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations

omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.

Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Id.  Thus, "only a complaint that states a

plausible claim for relief survives a motion to dismiss." Id. at 1950.  When considering a motion

to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a

plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467

U.S. 69, 73 (1984).

III.  Discussion

Defendants contend that, for myriad reasons, Plaintiff has no standing to bring a

malpractice suit and that Plaintiff cannot state a claim for malpractice.  The Court disagrees.

Under Florida law, the elements of a legal malpractice action are: "1) the attorney's employment;

2) the attorney's neglect of a reasonable duty; and 3) the attorney's negligence as the proximate

cause of loss to the client."  Larson v. Larson, P.A. v. TSE Industries, Inc., 22 So. 3d 36, 39 (Fla.

2009).[1]  Here, Plaintiff has alleged each of these elements. Plaintiff  retained Defendants to

---

[1] The Court disagrees with Defendants that the only way for Plaintiff to pursue a
malpractice claims is to wait until an underlying adverse judgment becomes final upon the
exhaustion of appellate rights. (Mot. at 6 citing Silverstrone v. Edell, 721 So. 2d 1173, 1175 n.2

research, draft, file and prosecute his patent application with the USPTO.  (Am. Compl. ¶ 25.)

Plaintiff also alleges that Defendants failed to discharge their professional duty, which resulted in

damages. (Am. Compl. ¶ ¶ 24, 29-36, 50, 55, 60-62, 78, 102-03,107-08, 115-16.)

In so finding, the Court rejects Defendants' argument that Plaintiff must first seek to

invalidate the Miller patent or bring a suit against Larry Miller.  The controversy at issue exists

between Plaintiff and the law firm against which he alleges malpractice.  No third party is needed

to give Plaintiff standing or create a concrete controversy against the law firm or Mr. Haley.[2] To

the extent Defendants contend Plaintiff's claim for damages is speculative, the Court finds that

damages are properly pled. Whether or not Plaintiff can show these damages, however, is a

question of fact that will not be addressed at the pleading stage.  That stated, there is nothing

improper about Plaintiff's claim that had Defendants drafted his patent in the manner the Miller

patent was drafted, Plaintiff would have had the same business opportunities as Larry Miller.

Moreover, Plaintiff may be able to show that had Defendants drafted broader claims, he would

have been able to succeed in an infringement claim against Larry Miller or recover a royalty

against the manufacturers of the Elliptigo and the Streetstrider devices. In other words, to prevail

on his malpractice claim, Plaintiff "must prove that [ ]he would have prevailed on the[se]

underlying action[s] but for the attorney's negligence." Tarleton v. Arnstein & Lehr, 719 So. 2d

---

(Fla. 1998)).  That rule only applies to malpractice cases arising out of litigation. Id. at 1175; see
also Natural Answers, Inc. v. Carlton Fields, P.A., 20 So. 3d 884, 887-89 (Fla. Dist. Ct. App.
2009) (discussing transactional versus litigation malpractice); cf. Immunocept, LLC v. Fulbright
& Jaworski, LLP, 504 F.3d 1281, 1284–85 (Fed. Cir. 2007) (recognizing that a claim drafting
error by an attorney which narrowed the scope of the patent can be an element of a state
malpractice cause of action).

[2] For the same reasons, Defendants' claim that Larry Miller is a necessary party is
rejected.

325, 328 (Fla. Dist. Ct. App. 1998) ("This requirement has resulted in a legal malpractice action being referred to as a "'trial within a trial.'")

Lastly, the Court rejects Defendants' argument that Plaintiff fails to state a claim for breach of contract because the allegations for the negligence and breach of contract claim are identical.  A plaintiff may plead alternative theories of relief. See Fed. R. Civ. P. 8(d)(2) ("[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically"); Manicini Enterprises, Inc. v. American Exp. Co., 236 F.R.D. 695, 698-99 (S.D. Fla. 2006) (a plaintiff may plead inconsistent or alternative theories of relief). [3]

For the reasons stated herein, Defendants' motion to dismiss the Amended Complaint is denied.

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1)      Defendants' Motion to Dismiss Plaintiff's Amended Complaint (DE 33) is

        **DENIED**.

2)       Plaintiff's Opposed Motion for Oral Argument (DE 37) is **DENIED**.

---

[3] The Court also notes that the economic loss rule does not bar a cause of action against a professional for negligence even if the damages are purely economic in nature. Moransais v. Heathman, 744 So. 2d 973, 979 (Fla. 1999).

3)      Defendants' Motion for Consideration of Supplemental Authority (DE 41) is

**DENIED AS MOOT.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County,

Florida, this 7th day of June, 2012.

 

_____
KENNETH A. MARRA
United States District Judge